# IN THE UNITED STATES DISTRICT COURT

# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL NO. 26- |
| v. | : | DATE FILED: |
| TINISHA LOUD | : | VIOLATIONS:<br>18 U.S.C. § 1341 (mail fraud – 4 counts) |
| | : | 18 U.S.C. § 641 (theft of government money – 1 count) |
| | : | Notice of forfeiture |

## INFORMATION

## COUNTS ONE THROUGH FOUR
### (Mail Fraud)

**THE UNITED STATES ATTORNEY CHARGES THAT:**

At all times material to this information:

### INTRODUCTION

1.      Defendant TINISHA LOUD was a resident of Philadelphia, Pennsylvania who was unemployed and received unemployment compensation from the Commonwealth of Pennsylvania.

2.      Timeeka Loud, charged elsewhere, was a tax return preparer. Timeeka Loud was defendant TINISHA LOUD's mother.

3.      Meeka Care LLC ("Meeka Care") was a limited liability company formed by defendant TINISHA LOUD and Timeeka Loud in or about March 2021. Meeka Care's purported business was home health care services. Defendant TINISHA LOUD did not report wages paid to employees of Meeka Care on any income tax returns that she filed for tax years 2020 through 2023. Additionally, the Internal Revenue Service ("IRS") did not receive an IRS Form W-2 for any Meeka Care employees for these tax years.

4.     Nataetrocelline LLC ("Natae") was a limited liability company formed by defendant TINISHA LOUD in or about September 2020. Natae's purported business purpose was online sales of hair and clothing products. Defendant TINISHA LOUD did not report wages paid to employees of Natae on any income tax returns that she filed for tax years 2020 through 2023. Additionally, the IRS did not receive an IRS Form W-2 for any Natae employees for these tax years.

**The COVID-19 Relief Tax Credits**

5.     The Coronavirus Aid, Relief, and Economic Security Act (the "CARES Act"), enacted on March 27, 2020, provided for an employee retention credit ("ERC") designed to encourage businesses to retain employees on their payroll during the COVID-19 pandemic. The Taxpayer Certainty and Disaster Tax Relief Act of 2020 and the American Rescue Plan Act ("ARPA") modified and extended the ERC.

6.     For calendar year 2020, eligible employers were authorized to claim an ERC offsetting certain employment taxes that could not exceed 50 percent of up to $10,000 of qualified wages paid to each employee from March 13, 2020 through December 31, 2020. The maximum ERC was $5,000 per employee for calendar year 2020. For calendar year 2021, eligible employers were authorized to claim an ERC offsetting certain employment taxes that could not exceed 70 percent of up to $10,000 of qualified wages paid to each employee during each quarter. The maximum ERC was $7,000 per employee per quarter for calendar year 2021.

7.     Generally, businesses and tax-exempt organizations that qualified for the ERC were those that: (a) were shut down during 2020 or the first three calendar quarters of 2021 by government order due to the COVID-19 pandemic; (b) experienced a specified decline

2

in gross receipts during the eligibility periods during 2020 or the first three calendar quarters of 2021; or (c) qualified as a recovery startup business for the third or fourth quarters of 2021.

8.      The Families First Coronavirus Response Act provided for eligible employers to receive refundable tax credits for wages paid to employees while on sick leave to recover from any injury, disability, illness, or condition resulting from COVID-19 or wages paid to employees while on family leave to care for a family member who was injured, disabled, ill, or otherwise suffering from a condition due to COVID-19. These credits were called the Qualified Sick and Family Leave ("QSFL") credit.

9.      Employers were entitled to receive a dollar-for-dollar QSFL credit for qualified wages paid to an employee, plus allocable health plan expenses and the employer's share of Medicare taxes, while the employee was on sick leave resulting from COVID-19. This QSFL credit was limited to up to ten days of sick leave per employee for the period ending March 31, 2021. That resulted in a maximum credit of $5,110 per employee for that period. The ARPA provided an identical credit for the period from April 1, 2021 through September 31, 2021, with an identical maximum of $5,110 in QSFL credits per employee.

10.      Employers were also entitled to receive a QSFL credit of up to two-thirds of the qualified wages paid to an employee while the employee was on family leave to care for a family member suffering from a condition resulting from COVID-19, plus allocable health plan expenses and the employer's share of Medicare taxes. For the period ending March 31, 2021, this credit was limited to up to $200 per day for up to ten weeks, resulting in a maximum eligible credit of $10,000 per employee. The ARPA provided an identical credit for the period April 1, 2021 through September 30, 2021, and extended the length of family leave to twelve

3

weeks, thereby raising the maximum eligible QSFL credit for this period to $12,000 per employee.

**Form 941 Filings**

11.     ERC and QSFL credits (referred to collectively as "COVID-19 related tax credits") were claimed by employers by filing an Employer's Quarterly Federal Tax Return, Form 941, or an Adjusted Employer's Quarterly Federal Tax Return or Claim of Refund, Form 941X (collectively and interchangeably, "Form 941," "Forms 941," or "Form 941s"), with the IRS for the relevant quarter or quarters.

12.     Forms 941 reported the business name, its address, and the employer's Employer Identification Number ("EIN"), also known as the Federal Employer Identification Number or the Federal Tax Identification Number. The Form 941s also reported the number of employees that the business had and the wages paid by the business during that quarter.

13.     Critically, in order to qualify for the ERC and related QSFL credit, the filing business must have paid employees during certain quarters during the COVID-19 pandemic. Moreover, for the QSFL credit, the filing business must have paid sick or family leave wages. Employers were not eligible to receive both the ERC and QSFL credit with respect to the same wages.

14.     Employers that paid sick and family leave wages in quarters in 2020, 2021, 2022, and 2023 for leave that employees took after March 31, 2020, and before October 1, 2021, were eligible to claim a credit for qualified sick and family leave wages on Forms 941 for the quarters in which those qualified wages were paid.

15.     For the COVID-19 related credits, based on the amounts reported on the Form 941, the U.S. Treasury issued a check in the name of the employer identified on the Form

941 and mailed the check to the employer's address as it appeared on the Form 941. Each Form 941 represented a separate claim to the government.

16.     The IRS relied on the information reported on the Form 941 filed for each quarter, or for each quarter in the event Form 941 was filed late, about the purported business' existence, number of employees, and wages paid to the employees to make the credit payments to employers.

17.     Forms 941 could be electronically filed with the IRS using tax preparation websites, such as, in this case, TaxBandits.

18.     TaxBandits was a legitimate commercially available tax preparation software provided by SPAN Enterprises. TaxBandits was an online application primarily used to file Forms 941 with the IRS. The TaxBandits program captured a range of information about each Form 941 user and transaction. TaxBandits records identified: (i) the nature of each individual activity (*e.g.*, creating an account; updating information; adding credit card information; and transmitting to IRS); (ii) the dates and time stamps of the activity; (iii) the Internet Protocol ("IP") address from which the activity originated; and (iv) the type of device and web browser used to access the TaxBandits software.

19.     Upon receipt of each Form 941, TaxBandits sent an email to the submitter of the Form 941 and to the individual/entity that was identified as the employer on each Form 941. These emails included a link to four documents: a copy of the Form 941, a copy of Form 8453 (E-File Declaration for Employment Tax Return), an online filing acceptance letter, and a receipt for payment of the TaxBandits filing fee.

**THE SCHEME**

20.     From in or about early 2022 to in or about late 2023, in the Eastern District of Pennsylvania, and elsewhere, defendant

**TINISHA LOUD**,

together with co-schemer Timeeka Loud, devised and intended to devise a scheme to defraud the IRS and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises.

**MANNER AND MEANS**

It was a part of the scheme that:

**Meeka Care Filings**

21.     On or about June 23, 2022, defendant TINISHA LOUD and Timeeka Loud filed and caused to be filed a false Form 941 for Meeka Care for the first quarter of 2021, seeking fraudulent refundable credits. This form falsely stated, among other things, that Meeka Care had five employees.

22.     On or about February 5, 2022, defendant TINISHA LOUD and Timeeka Loud filed and caused to be filed false Form 941s for Meeka Care for the second, third, and fourth quarters of 2021, seeking fraudulent refundable credits. These forms falsely stated, among other things, that Meeka Care had five employees.

23.     On or about October 8, 2022, defendant TINISHA LOUD and Timeeka Loud filed and caused to be filed false Form 941s for Meeka Care for the first, second, and third quarters of 2022, seeking fraudulent refundable credits. These forms falsely stated, among other things, that Meeka Care had five employees.

24.     In total, over this period, defendant TINISHA LOUD and Timeeka Loud sought approximately $1,614,494.59 in fraudulent ERC/QSFL refundable credits and approximately $1,501,849.26 in fraudulent tax refunds in the name of Meeka Care.

25.     As a result of the filing of the false Forms 941 for the first through the third quarters of 2021, defendant TINISHA LOUD and Timeeka Loud caused the IRS to issue three U.S. Treasury checks totaling approximately $670,062.71 to "Meeka Care; Tinisha Loud Sole Mbr" on or about July 5, 2022. Pursuant to the information entered on the fraudulent Forms 941, the IRS mailed these checks to defendant TINISHA LOUD at her address in Philadelphia, Pennsylvania.

### Natae Filings

26.     On or about January 23, 2022, defendant TINISHA LOUD and Timeeka Loud filed and caused to be filed a false Form 941 for Natae for the first quarter of 2021, seeking fraudulent refundable credits. This form falsely stated, among other things, that Natae had five employees.

27.     On or about February 5, 2022, defendant TINISHA LOUD and Timeeka Loud filed and caused to be filed false Form 941s for Natae for the second, third, and fourth quarters of 2021, seeking fraudulent refundable credits. These forms falsely stated, among other things, that Natae had five employees.

28.     On or about August 11, 2022, defendant TINISHA LOUD and Timeeka Loud filed and caused to be filed false Form 941s for Natae for the third and fourth quarters of 2020, seeking fraudulent refundable credits. These forms falsely stated, among other things, that Natae had five employees.

29.    On or about October 13, 2022, defendant TINISHA LOUD and Timeeka Loud filed and caused to be filed false Form 941s for Natae for the first, second, and third quarters of 2022, seeking fraudulent refundable credits. These forms falsely stated, among other things, that Natae had five employees.

30.    On or about January 6, 2023, defendant TINISHA LOUD and Timeeka Loud filed and caused to be filed a false Form 941 for Natae for the fourth quarter of 2022, seeking fraudulent refundable credits. This form falsely stated, among other things, that Natae had five employees.

31.    On or about September 27, 2023, defendant TINISHA LOUD and Timeeka Loud filed and caused to be filed false Form 941s for Natae for the first, second, and third quarters of 2023, seeking fraudulent refundable credits. These forms falsely stated, among other things, that Natae had five employees.

32.    In total, over this period, defendant TINISHA LOUD and Timeeka Loud sought approximately $2,751,695.15 in fraudulent ERC/QSFL refundable credits and approximately $2,560,610.07 in fraudulent tax refunds on behalf of Natae.

33.    As a result of the filing of the false Form 941 for the second quarter of 2022, defendant TINISHA LOUD and Timeeka Loud caused the IRS to issue a U.S. Treasury check in the amount of approximately $193,291.76 to Nataetrocelline LLC on or about November 15, 2022. Pursuant to the information entered on the fraudulent Form 941, the IRS mailed the check to defendant TINISHA LOUD at her address in Philadelphia, Pennsylvania.

**Refund Checks and Banking Activity**

34.    On or about May 26, 2022, defendant TINISHA LOUD opened an account in the name of "Nataetrocelline LLC" at Key Bank.

35.    On or about July 8, 2022, defendant TINISHA LOUD deposited a U.S. Treasury check in the amount of approximately $205,553.83 made payable to "Meeka Care; Tinisha Loud Sole Mbr" into the Key Bank account. At the time of the deposit, the account had a negative balance.

36.    On or about July 13, 2022:

a.    Defendant TINISHA LOUD opened two business bank accounts at Citizens Bank, one ending in 2175 and the other ending in 0610, both in the name of "Meeka Care LLC."

b.    Defendant TINISHA LOUD deposited a U.S. Treasury check in the amount of approximately $258,954.85, dated July 5, 2022, which was made payable to "Meeka Care; Tinisha Loud Sole Mbr," into the Meeka Care Citizens Bank account ending in 2175.

36.    On or about July 26, 2022:

a.    Defendant TINISHA LOUD transferred approximately $258,000 from Citizens Bank account ending in 2175 to Citizens Bank account ending in 0610.

b.    Defendant TINISHA LOUD caused a wire transfer of $348,000 from Citizens Bank account ending in 0610 to purchase a house in her name at 601 W. Chelten Avenue, Philadelphia, Pennsylvania.

37.    On or about July 27, 2022, after engaging in miscellaneous spending using the Natae account at Key Bank, defendant TINISHA LOUD transferred approximately

$195,000 from the Natae account at Key Bank to the Meeka Care account ending in 2175 at Citizens Bank.

38. On or about August 3, 2022, defendant TINISHA LOUD wrote a check in the amount of approximately $47,000 from the Citizens Bank account ending in 2175 payable to Mercedes Benz of Fort Washington for the purchase of a 2017 Mercedes Benz. At the time of the purchase, there had been no other deposits made to the account that were not funds received by defendant TINISHA LOUD via U.S. Treasury check. With the remaining funds in the Citizens Bank account ending in 2175, defendant LOUD made numerous cash withdrawals and transfers to her Citizens Bank account in 0610.

39. On or about November 17, 2022:

a. Defendant TINISHA LOUD opened a business account in the name of "Nataetrocelline LLC" at TD Bank.

b. Defendant TINISHA LOUD deposited a U.S. Treasury check in the amount of approximately $193,291.76, dated November 15, 2022, which was payable to Nataetrocelline LLC. No other deposits were made to the account.

40. With the remaining proceeds of the fraudulently-obtained U.S. Treasury refund checks, defendant TINISHA LOUD engaged in the purchase of luxury and miscellaneous items, unrelated to any business activities.

10

41.     On or about the dates set forth below, in Philadelphia, in the Eastern District of Pennsylvania, and elsewhere, defendant

**TINISHA LOUD**,

for the purpose of executing the scheme described above, knowingly caused to be delivered by mail according to the directions thereon the mailings described below for each count, each mailing constituting a separate count, delivered from Kansas City, Missouri, to Philadelphia, Pennsylvania:

| Count | Tax Period | Approx. Mailing Date of U.S. Treasury Check | Business Entity | Approx. Amount of Check Issued |
|---|---|---|---|---|
| 1 | 1Q21 | 7/5/22 | Meeka Care | $258,954.85 |
| 2 | 2Q21 | 7/5/22 | Meeka Care | $205,553.83 |
| 3 | 3Q22 | 7/5/22 | Meeka Care | $205,553.83 |
| 4 | 2Q22 | 11/15/22 | Natae | $193,291.76 |

All in violation of Title 18, United States Code, Section 1341.

## COUNT FIVE
### (Theft of Government Money)

**THE UNITED STATES ATTORNEY FURTHER CHARGES THAT:**

1.     Paragraphs 1 through 19 and 21 through 40 of Counts One through Four are incorporated here.

2.     From in or about early 2022 to in or about late 2023, in the Eastern District of Pennsylvania, and elsewhere, defendant

**TINISHA LOUD**

stole, purloined, and knowingly converted to her own use a thing of value of the United States in the amount of over $1,000, that is, U.S. Treasury checks made payable to "Meeka Care; Tinisha Loud Sole Mbr" and Nataetrocelline LLC totaling approximately $863,354.47.

In violation of Title 18, United States Code, Section 641.

12

## NOTICE OF FORFEITURE

**THE UNITED STATES ATTORNEY FURTHER CHARGES THAT:**

1.      As a result of the violations of Title 18, United States Code, Sections 1341 and 641, set forth in this information, defendant

**TINISHA LOUD**

shall forfeit to the United States of America any property, real or personal, constituting, or derived from, proceeds obtained traceable to such violations, including, but not limited to $863,354.47, and:

(a)      601 W. Chelten Avenue, Philadelphia, Pennsylvania 19126; and

(b)      2017 Mercedes Benz, GLC300, VIN WDC0G4KB9HF148880.

2.      If any of the property subject to forfeiture, as a result of any act or omission of the defendant:

(a)      cannot be located upon the exercise of due diligence;

(b)      has been transferred or sold to, or deposited with, a third party;

(c)      has been placed beyond the jurisdiction of the Court;

(d)      has been substantially diminished in value; or

(e)      has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to Title 28, United States Code, Section 2461(c), incorporating Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of the defendant up to the value of the property subject to forfeiture.

All pursuant to Title 28, United States Code, Section 2461(c) and Title 18, United States Code, Section 981(a)(1)(C).

**DAVID METCALF**
**UNITED STATES ATTORNEY**

*No.*_ _ _ _ _ _ _ _ _ _

**UNITED STATES DISTRICT COURT**

Eastern District of Pennsylvania

<u>Criminal Division</u>

THE UNITED STATES OF AMERICA

vs.

Tinisha Loud

INFORMATION

Counts

18 U.S.C. § 1341 (mail fraud – 4 counts)
18 U.S.C. § 641 (theft of government money – 1 count)
Notice of forfeiture

A true bill.

_____
Foreperson

Filed in open court this _____day,
Of _____A.D. 20_____

_____
Foreperson

Bail, $_____